**DEREK SMITH LAW GROUP, PLLC**
ZACHARY ALVAREZ, ESQUIRE
Attorney ID No. 338565
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0866
zachary@dereksmithlaw.com
*Attorneys for Plaintiff, Armani Lee Gianni*

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ARMANI LEE GIANNI,<br><br>Plaintiff,<br><br>v.<br><br>MANATAWNY MANOR CENTER FOR REHABILITATION AND NURSING (D/B/A "MANATAWNY MANOR"), MARK KESSLER, LINDA MERBEDONE, NICOLE JOHNSON, AND KALITA LOGAN<br><br>Defendants. | Civil Action No. |

**CIVIL ACTION COMPLAINT**

Plaintiff, Armani Lee Gianni, by and through her undersigned counsel, Derek Smith Law Group, PLLC, brings this Civil Action Complaint against Defendants, Manatawny Manor Center for Rehabilitation and Nursing (d/b/a "Manatawny Manor"), Mark Kessler, Linda Merbedone, Nicole Johnson, and Kalita Logan, and in support thereof alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1. This is an action for damages to redress Defendant's unlawful employment practices committed against Plaintiff, including discrimination on the basis of sex (including gender identity and transgender status), the maintenance of a hostile work environment, retaliation, and constructive discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA").

2. Plaintiff is a transgender woman who was subjected to persistent misgendering, the nonconsensual disclosure of her transgender status and private medical history by Defendant's management, degrading and humiliating comments about her sex and gender identity, and disparate treatment in the terms and conditions of her employment. When Plaintiff complained about the discrimination and harassment, Defendant retaliated against her, escalated the hostile conditions of her employment, and forced her to resign, culminating in her constructive discharge on or about November 18, 2025.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f), as this action arises under the laws of the United States and seeks to redress the deprivation of rights secured by Title VII.

4. This Court has supplemental jurisdiction over Plaintiff's state-law claims arising under the PHRA pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal claims that they form part of the same case or controversy and arise from a common nucleus of operative fact.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices alleged herein were committed within this District, Defendant conducts business and maintains the facility at issue within this District, and the employment records relevant to the alleged unlawful practices are maintained and administered within this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff has satisfied all statutory and administrative prerequisites to the filing of this action.

7. On or about May 1, 2026, Plaintiff timely filed a verified Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), designated as Charge No. 530-2026-00554, alleging discrimination on the basis of sex and retaliation.

8. Plaintiff's EEOC Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC") pursuant to the worksharing agreement between the EEOC and the PHRC, thereby satisfying the dual-filing requirements of the PHRA.

9. Plaintiff's claims with the PHRC are not yet ripe for suit because the administrative processes have not been completed, nor has the investigation been ongoing for more than one year.

10. As such, Plaintiff reserves her right to amend this Complaint at such time as her rights pursuant to the Pennsylvania Human Relations Act become ripe.

11. On or around June 25, 2026, the EEOC issued Plaintiff a Right to Sue.

12. This action is being commenced within 90 days of receipt of the EEOC Right to Sue Letter.

## PARTIES

13. Plaintiff, Armani Lee Gianni, is an adult individual and a transgender woman who, at all times relevant hereto, resided in Philadelphia, Pennsylvania.

14. Plaintiff is a member of a protected class on the basis of her sex, including her gender identity and transgender status.

15. Defendant, Manatawny Manor Center for Rehabilitation and Nursing (d/b/a "Manatawny Manor"), is a rehabilitation and skilled-nursing facility with a principal place of business located at 30 Old Schuylkill Road, Pottstown, Pennsylvania 19465.

16. At all times hereto, Manatawny Manor was Plaintiff's "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the PHRA, 43 P.S. § 954(b).

17. Manatawny Manor engaged in an industry affecting commerce and employed more than fifteen (15) employees.

18. At all times relevant, Manatawny Manor acted through its owners, officers, directors, administrators, managers, supervisors, agents, and employees, each of whom acted within the course and scope of their employment and agency, such that Manatawny Manor is liable for their acts and omissions under the doctrine of respondeat superior and applicable law.

19. Defendant, Mark Kessler, is an adult individual who was, at all times relevant hereto, employed by Manatawny Manor as its Administrator and is sued herein in his individual capacity.

20. Defendant, Linda Merbedone, is an adult individual who was, at all times relevant hereto, employed by Manatawny Manor as its Director of Human Resources and is sued herein in her individual capacity.

21. Defendant, Nicole Johnson, is an adult individual who was, at all times relevant hereto, employed by Manatawny Manor and is sued herein in her individual capacity.

22. At all times material, Ms. Johnson's conduct as described herein was motivated by personal bias against Plaintiff's transgender status and gender identity, and was not undertaken in furtherance of any legitimate business, supervisory, or employment-related purpose, and did not arise out of any work-related dispute between Plaintiff and Ms. Johnson.

23. Defendant, Kalita Logan, is an adult individual who was, at all times relevant hereto, employed by Manatawny Manor as a CNA and is sued herein in her individual capacity.

24. At all times material, the conduct of Ms. Logan described herein was motivated by personal bias against Plaintiff's transgender status and gender identity, and was not undertaken in furtherance of any legitimate business or employment-related purpose.

## FACTUAL ALLEGATIONS

25. Plaintiff began working at Manatawny Manor’s facility as an agency Certified Nursing Assistant ("CNA") on or about October 14, 2024, and worked in that agency capacity through on or about August 5, 2025.

26. On or about August 6, 2025, Plaintiff was hired as a full-time staff CNA employed directly by Manatawny Manor, earning an hourly rate of approximately $23.00.

27. Plaintiff was a dedicated and competent CNA, performing her job duties in a satisfactory or exemplary manner.

28. Manatawny Manor's own management acknowledged the high quality of her work.

29. Plaintiff is a transgender woman.

30. She completed her gender transition in or about 2005, having legally changed her name, legally changed her gender marker, and undergone years of gender-affirming medical care. Plaintiff's transgender status and medical history are private, and Plaintiff did not disclose that information in the workplace.

31. In or about April 2025, Plaintiff learned from a coworker that her supervisor, Nicole Johnson, had been telling other members of Manatawny Manor's staff that Plaintiff is transgender and had been showing coworkers photographs of Plaintiff taken before and after her gender transition.

32. Ms. Johnson represented to staff that she and Plaintiff had worked together at another facility in 2018 and falsely represented that Plaintiff was "transitioning" at that time.

33. In truth, Plaintiff had completed her transition years earlier, and at no time did Plaintiff disclose her transgender status to Ms. Johnson or to Manatawny Manor's other employees.

34. The disclosure of Plaintiff's transgender status and private medical history caused Plaintiff immediate and severe anxiety and emotional distress.

35. In or about April 2025, Plaintiff reported the disclosure of her transgender status to then-supervisor Julia Last Name Unknown, who told Plaintiff not to let it bother her but took no corrective action.

36. In or about May 2025, Plaintiff met directly with Ms. Johnson to discuss the disclosure; Ms. Johnson denied making the statements attributed to her, and Manatawny Manor took no corrective action.

37. The coworker who had informed Plaintiff of Ms. Johnson's conduct was thereafter terminated.

38. After Plaintiff's transgender status became known throughout the facility, Plaintiff was subjected to pervasive, ongoing harassment because of her sex, gender identity, and transgender status.

39. A group of Plaintiff's coworkers, including CNA Kalita Logan, repeatedly and intentionally misgendered Plaintiff and called her by the wrong pronouns.

40. The misgendering was so frequent that, on average, Plaintiff was misgendered on two out of every three days she worked.

41. Plaintiff was subjected to a steady stream of degrading, humiliating, and hostile remarks directed at her sex and gender identity, including comments such as "Don't listen to him," "That's why I have a husband - to argue with people like you," "I don't like your kind," "I was born a woman," and "We don't mess with your kind, I'm a born woman."

42. On one occasion, when a shift assignment sheet reflected that all assigned staff were female, a coworker remarked that "there's no male care for her."

43. Plaintiff reasonably understood this comment to be a demeaning reference to her gender identity.

44. Plaintiff was repeatedly subjected to hostile facial expressions, eye-rolling, sarcastic remarks, and pointed comments such as "I wonder where he's going" and "He's here" as she walked through the facility.

45. In or about June 2025, Plaintiff complained to night supervisor Kaitlyn Last Name Unkown about the treatment she was receiving from certain staff members.

46. Within weeks of that complaint, Kaitlyn began speaking to Plaintiff in a rude and dismissive manner, which resulted in a confrontation between them.

47. In or about July 2025, Plaintiff raised concerns with Manatawny Manor's scheduler, Ashley Mutter, regarding the lack of support she was receiving from coworkers and again complained to Ms. Johnson about the ongoing hostile treatment.

48. This includes in August 2025, when Plaintiff reported the staff behavior and hostility towards her, as well as the repeated incidents of being misgendered to the Manatawny Manor's then-Director of Nursing, Cheryl Rogers.

49. In or about September 2025, coworkers Kalita Logan and another CNA, Ciara Ford, confronted Plaintiff in a hallway in front of residents and staff.

50. During the confrontation, Ms. Logan accused Plaintiff of complaining to management and stated, among other things, that "we don't mess with your kind" and "I'm a born woman."

51. The confrontation escalated to the point that a nurse had to physically intervene and separate the individuals from Plaintiff.

52. Later that same day, Ms. Rogers met with Plaintiff regarding the confrontation.

53. Plaintiff explained that the incident resulted directly from Manatawny Manor's continued failure to act on her prior complaints.

54. Plaintiff made numerous verbal complaints about the harassment, misgendering, and discriminatory treatment through Manatawny Manor's chain of command, including to

charge nurses, unit managers, supervisors, and successive Directors of Nursing, beginning in or about April 2025 and continuing throughout her employment.

55. Rather than remedy the discrimination and harassment, Manatawny Manor retaliated against Plaintiff for engaging in protected activity.

56. Plaintiff observed a recurring pattern in which, each time she raised a legitimate concern, she was shortly thereafter made the subject of a purported complaint.

57. These complaints were consistently generated by the same coworkers with whom Plaintiff had reported conflicts, not by residents or their families, and frequently involved residents who were confused and not alert or oriented.

58. Shortly after Plaintiff reported misconduct, Manatawny Manor's scheduler, Ms. Mutter, began canceling Plaintiff's scheduled shifts without justification or advance notice, causing Plaintiff to drive approximately forty-five minutes (often more than an hour in traffic) to the facility only to learn that she had been removed from the schedule.

59. The scheduler acknowledged that the shift cancellations were retaliatory.

60. On days Plaintiff was not removed from the schedule, Plaintiff's unit assignment would be switched, and the coworkers Plaintiff had reported for harassment would leave their cleaning and care duties undone for Plaintiff.

61. Plaintiff routinely arrived to find residents left in soiled briefs, dirty linens, and untouched meal trays, and Manatawny Manor's managers directed Plaintiff to handle the conditions rather than disciplining the responsible employees.

62. Manatawny Manor promptly addressed and disciplined complaints raised by other, non-transgender employees, while ignoring Plaintiff's complaints and instead subjecting Plaintiff to discipline and adverse treatment.

63. Another nurse, Amanda Nestor, told Plaintiff that the only reason Plaintiff had not been fired was that Plaintiff was "a good CNA," confirming that Manatawny Manor viewed Plaintiff as a target for termination notwithstanding the quality of her work.

64. On or about October 9, 2025, Plaintiff submitted a formal written complaint by email to Manatawny Manor's Human Resources Director, Linda Merbedone; then-supervisor Nicole Johnson; and Administrator, Mark Kessler.

65. In that complaint, Plaintiff reported, among other things, harassment, bullying, and discrimination based on her gender identity, disrespectful and hostile treatment by coworkers, resident-safety concerns, her prior verbal complaints, and her fear of retaliation for reporting.

66. In response to Plaintiff's October 9, 2025 complaint, Manatawny Manor's officials informed Plaintiff that an investigation would be conducted and that Ms. Logan had been suspended for the duration of the investigation.

67. The suspension was the extent of the discipline imposed, and Manatawny Manor otherwise failed to take prompt and effective remedial action.

68. On or about October 21, 2025, Plaintiff was called into a meeting she understood would address her discrimination complaint.

69. Instead of addressing her complaint, Manatawny Manor issued Plaintiff a "First and Final Written Warning," issued and signed by then-Director of Nursing Cheryl Rogers, concerning a resident skin-care and reporting matter.

70. Plaintiff had, in fact, properly reported the skin condition to the unit LPN, and any further evaluation or treatment of the condition fell outside the scope of a CNA's practice and authority.

71. Plaintiff disputed the discipline at the time it was issued and refused to sign the written warning.

72. On or about October 30, 2025, Plaintiff submitted a second formal written complaint by email, reporting continued retaliation, the last-minute cancellation of her scheduled shifts, the reassignment and manipulation of her work assignments, favoritism within management that interfered with accountability, and Manatawny Manor's continued failure to address her complaints.

73. Manatawny Manor's ongoing discrimination, harassment, and retaliation, together with its failure to take meaningful corrective action despite Plaintiff's repeated verbal and written complaints, rendered Plaintiff's working conditions so intolerable that Plaintiff felt compelled to resign.

74. On or about November 18, 2025, while at work, Plaintiff suffered a panic attack brought on by the hostile work environment.

75. On this morning, like so many before, Plaintiff arrived to find residents left in soiled briefs, dirty linens, and untouched meal trays.

76. Plaintiff informed Director of Nursing Ms. Johnson of the state of the rooms, who told her that Plaintiff would just have to deal with it.

77. Plaintiff attempted to return to work, but the treatment from her colleagues and the failure of Manatawny Manor to correct it caused her to suffer a panic attack.

78. Plaintiff informed Ms. Johnson that she was having a panic attack and could not continue working under those conditions, and Plaintiff resigned.

79. Following her constructive discharge, Manatawny Manor placed Plaintiff on its "Do Not Rehire" list, both for the facility where she worked and for Manatawny Manor affiliated personal-care organization, further harming Plaintiff's employment prospects.

80. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, loss of future earning capacity, emotional distress, anxiety, humiliation, and other pecuniary and non-pecuniary losses.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**Discrimination on the Basis of Sex**
**(Against Defendant Manatawny Manor)**

81. Plaintiff hereby incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

82. Title VII prohibits employers from discriminating against any individual with respect to the terms, conditions, or privileges of employment because of such individual's sex. Discrimination on the basis of transgender status and gender identity is discrimination "because of . . . sex" within the meaning of Title VII.

83. Plaintiff is a member of a protected class on the basis of her sex, including her gender identity and transgender status.

84. Manatawny Manor discriminated against Plaintiff in the terms and conditions of her employment because of her sex, including by disclosing her transgender status, subjecting her to disparate treatment in work assignments and scheduling, disciplining her, and constructively discharging her.

85. Manatawny Manor's stated reasons for its adverse actions against Plaintiff are pretextual, and Plaintiff's sex was a motivating factor in Manatawny Manor's conduct.

86. As a direct and proximate result of Manatawny Manor's unlawful discrimination, Plaintiff has suffered the damages set forth above.

87. Manatawny Manor's conduct was intentional, willful, malicious, and/or committed with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

**COUNT II**
**Violation of Title VII of the Civil Rights Act of 1964**
**Hostile Work Environment**
**(Against Defendant Manatawny Manor)**

88. Plaintiff hereby incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

89. Plaintiff was subjected to unwelcome harassment because of her sex, including her gender identity and transgender status.

90. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create a work environment that was objectively and subjectively hostile, intimidating, humiliating, and abusive.

91. The harassment was carried out by Plaintiff's coworkers and by Manatawny Manor's supervisory and management personnel.

92. Manatawny Manor knew or should have known of the harassment, including through Plaintiff's repeated verbal and written complaints, yet failed to take prompt and effective remedial action, thereby subjecting Manatawny Manor to liability.

93. As a direct and proximate result of the hostile work environment, Plaintiff has suffered the damages set forth above, and Manatawny Manor's conduct entitles Plaintiff to punitive damages.

**COUNT III**
**Violation of Title VII of the Civil Rights Act of 1964**
**Retaliation**
**(Against Defendant Manatawny Manor)**

94. Plaintiff hereby incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

95. Plaintiff engaged in protected activity under Title VII when she opposed and complained about discrimination and harassment based on her sex and gender identity, including through her verbal complaints and her formal written complaints of October 9, 2025, and October 30, 2025.

96. Manatawny Manor subjected Plaintiff to materially adverse actions because of her protected activity, including issuing her unwarranted discipline, canceling and manipulating her shifts and assignments, subjecting her to continued harassment, failing to remediate the hostile work environment, constructively discharging her, and placing her on a "Do Not Rehire" list.

97. A causal connection exists between Plaintiff's protected activity and the adverse actions taken against her, as evidenced by, among other things, the close temporal proximity between her complaints and the adverse actions and the pattern of retaliatory conduct that followed each of her complaints.

98. As a direct and proximate result of Manatawny Manor's retaliation, Plaintiff has suffered the damages set forth above, and Defendant's conduct entitles Plaintiff to punitive damages.

**COUNT IV**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Mark Kessler, Individually)**

99. Plaintiff hereby incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

100. On or about October 21, 2025, Mr. Kessler personally convened and participated in a meeting with Plaintiff that Plaintiff reasonably understood would address her formal complaint of discrimination and harassment submitted less than two weeks earlier.

101. Instead of addressing that complaint, Mr. Kessler personally participated in issuing Plaintiff a "First and Final Written Warning" concerning a matter in which Plaintiff had, in fact, acted properly and within the scope of her duties.

102. Mr. Kessler's conduct in using the disciplinary process to punish Plaintiff in direct response to, and in retaliation for, her protected complaint of discrimination and harassment was extreme and outrageous.

103. Mr. Kessler engaged in this conduct intentionally or recklessly, with knowledge that using a pretextual disciplinary action to retaliate against a complainant of discrimination was reasonably certain to cause Plaintiff severe emotional distress.

104. As a direct and proximate result of Mr. Kessler's conduct, Plaintiff suffered severe emotional distress, as set forth above.

105. As a direct and proximate result of Mr. Kessler's conduct, Plaintiff has suffered damages as set forth above, and Mr. Kessler's conduct was outrageous, entitling Plaintiff to punitive damages.

**COUNT V**
**Intentional Infliction of Emotional Distress**

**(Against Defendant Linda Merbedone, Individually)**

106. Plaintiff hereby incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

107. As Defendant's Director of Human Resources, Ms. Merbedone received Plaintiff's formal written complaints of October 9, 2025 and October 30, 2025, detailing harassment, bullying, and discrimination based on Plaintiff's gender identity.

108. Rather than ensuring Plaintiff's complaint was addressed, Ms. Merbedone personally participated in the October 21, 2025 meeting at which Plaintiff was issued pretextual discipline in place of any remedy for her complaint.

109. Ms. Merbedone's conduct in facilitating the use of the disciplinary process against Plaintiff in direct response to, and in retaliation for, Plaintiff's protected complaints, rather than fulfilling her role in addressing those complaints, was extreme and outrageous.

110. Ms. Merbedone engaged in this conduct intentionally or recklessly, with knowledge that facilitating retaliatory discipline against a complainant of discrimination was reasonably certain to cause Plaintiff severe emotional distress.

111. As a direct and proximate result of Ms. Merbedone's conduct, Plaintiff suffered severe emotional distress, as set forth above.

112. As a direct and proximate result of Ms. Merbedone's conduct, Plaintiff has suffered damages as set forth above, and Ms. Merbedone's conduct was outrageous, entitling Plaintiff to punitive damages.

**COUNT VI**

**Intentional Infliction of Emotional Distress**

**(Against Defendant Nicole Johnson, Individually)**

113. Plaintiff hereby incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

114. Ms. Johnson's conduct, including her nonconsensual disclosure of Plaintiff's private transgender status and medical/transition history to coworkers, her display of private before-and-after photographs of Plaintiff to other staff, and her fabrication of a false and demeaning narrative that Plaintiff was "transitioning" as of 2018, was extreme and outrageous, exceeding all possible bounds of decency and atrocious and utterly intolerable in a civilized society.

115. Ms. Johnson engaged in this conduct intentionally or recklessly, with knowledge that disclosure of such private information to Plaintiff's coworkers was reasonably certain to subject Plaintiff to harassment, ridicule, and severe emotional distress.

116. Ms. Johnson's conduct was not an isolated incident but part of a continuing course of conduct, including her subsequent participation in and indifference to the hostile treatment Plaintiff endured as a direct result of the disclosure, and her dismissive response to Plaintiff's report of unaddressed resident-care conditions on November 18, 2025, immediately preceding Plaintiff's panic attack and constructive discharge.

117. As a direct and proximate result of Ms. Johnson's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to anxiety, panic attacks, and ongoing psychological harm.

118. Ms. Johnson's conduct toward Plaintiff was motivated by reasons personal to Ms. Johnson and was not directed at Plaintiff because of her employment or in the course of any legitimate work-related dispute.

119. As a direct and proximate result of Ms. Johnson's conduct, Plaintiff has suffered damages as set forth above, and Ms. Johnson's conduct was outrageous, entitling Plaintiff to punitive damages.

**COUNT VII**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Nicole Johnson, Individually)**

120. Plaintiff hereby incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

121. Ms. Logan's conduct, including her sustained and deliberate misgendering of Plaintiff, her isolation of Plaintiff from coworkers, her public confrontation of Plaintiff in a facility hallway in front of residents and staff, and her statements that "we don't mess with your kind" and "I'm a born woman," was extreme and outrageous, exceeding all possible bounds of decency and atrocious and utterly intolerable in a civilized society.

122. Ms. Logan's conduct was not an isolated incident but part of a continuous, sustained campaign of harassment directed at Plaintiff over a period of months, culminating in a public confrontation so severe that a nurse was required to physically separate Ms. Logan from Plaintiff.

123. Ms. Logan engaged in this conduct intentionally or recklessly, with knowledge that her sustained targeting of Plaintiff because of her transgender status was reasonably certain to cause Plaintiff severe emotional distress.

124. As a direct and proximate result of Ms. Logan's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, as set forth above and as documented by Plaintiff's medical and mental health treatment providers.

125. Ms. Logan's conduct toward Plaintiff was motivated by reasons personal to Ms. Logan, namely, bias against Plaintiff's transgender status, and was not directed at Plaintiff because of her employment or in the course of any legitimate work-related dispute.

126. As a direct and proximate result of Ms. Logan's conduct, Plaintiff has suffered damages as set forth above, and Ms. Logan's conduct was outrageous, entitling Plaintiff to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Armani Lee Gianni, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, and grant the following relief:

(a) Declaring that the acts and practices complained of herein violate Title VII and the PHRA;

(b) Enjoining Defendants from engaging in the unlawful practices, policies, and customs set forth herein;

(c) Awarding Plaintiff back pay, front pay, lost benefits, and other economic losses in an amount to be determined at trial;

(d) Awarding Plaintiff compensatory damages for emotional distress, pain and suffering, humiliation, and other non-economic losses in an amount to be determined at trial;

(e) Awarding Plaintiff punitive damages on her Title VII claims (Counts I through III) in an amount to be determined at trial;

(f) Awarding Plaintiff pre-judgment and post-judgment interest;

(g) Awarding Plaintiff reasonable attorneys' fees, expert fees, and the costs of this action pursuant to 42 U.S.C. § 2000e-5(k) and applicable law; and

(h) Awarding such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and claims so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

By: /s/ *Zachary Alvarez, Esquire*________

ZACHARY ALVAREZ, ESQUIRE
Attorney ID No. 338565
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0866
zachary@dereksmithlaw.com
*Attorneys for Plaintiff, Armani Lee Gianni*

Dated: September 21, 2026

**VERIFICATION**

I, Armani Lee Gianni, verify that I am the Plaintiff in this action and that the statements made in the foregoing Amended Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

Date: 09 / 21 / 2026

Armani L. Gianni

**ARMANI LEE GIANNI**